IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MIGUEL MENDEZ-ACEVEDO, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | NO. 13-2050 |
| CAROLYN COLVIN, Commissioner of Social Security, | : | |
| | : | |
| | : | |
| Defendant. | : | |

MEMORANDUM

BUCKWALTER, S.J.                                                                                         December 18, 2013

Currently pending before the Court are Plaintiff Miguel Mendez-Acevedo's Objections to the Report and Recommendation of United States Magistrate Judge Jacob P. Hart. For the following reasons, the Objections are overruled and the Report and Recommendation is approved and adopted.

I.      PROCEDURAL HISTORY

On January 15, 2010, Plaintiff Miguel Mendez-Acevedo, then thirty-five years old, filed an application for Supplemental Security Income ("SSI") pursuant to Title XVI of the Social Security Act, 42 U.S.C. § 301, et seq. (R. 140–51.)[1] His claim alleged disability, since December 30, 2007, due to pain and swelling in his right ankle. (Id. at 171, 176.) He later added a claim of affective/mood disorders. (R. 63.) The state agency denied Plaintiff's application on December 28, 2010, and Plaintiff timely requested a hearing before an administrative law judge

---

[1] For ease of discussion, citations to the administrative record will be referenced as "R. [page number]."

("ALJ"). (Id. at 64–67, 82–83.) Following the hearing—at which Plaintiff and a vocational expert testified—ALJ Nicholas Cerulli issued a decision, dated October 13, 2011, deeming Plaintiff "not disabled." (Id. at 24–33, 38–60.) On February 14, 2013, the Appeals Council denied Plaintiff's request for review, (id. at 1–3), making the ALJ's ruling the final decision of the agency. See 20 C.F.R. § 416.1572.

Plaintiff filed a Complaint in this Court on April 19, 2013. His Request for Review set forth two alleged errors, as follows: (1) it was legal error for the ALJ to rely upon a non-examining state agency source whose outdated opinion was offered before a vast bulk of the mental health evidence was even admitted into the record; and (2) the ALJ failed to give appropriate deference to the opinion of Plaintiff's treating psychiatrist, Pirooz Sholevar, M.D. On November 19, 2013, United States Magistrate Jacob P. Hart issued a Report and Recommendation ("R&R") recommending that Plaintiff's Request for Review be denied and that judgment be entered in favor of Defendant.

Plaintiff submitted Objections to the R&R on December 2, 2013, asserting that: (1) the ALJ improperly premised his analysis on the assumption that the non-examining State Agency opinion was based on a review of the complete medical evidence; (2) the ALJ's reasons for rejecting the treating sources opinion do not comport with Agency policy, which provides that the Agency give special deference to a treating physician's opinion; (3) the ALJ rejected the opinion of treating psychiatrist, Dr. Sholevar, without pointing to contrary medical evidence; (4) the rejection of a treating psychiatrist's medical opinion was based on evidence that was not found in the ALJ's decision; and (5) the ALJ never obtained a longitudinal picture of Plaintiff's mental illness. On December 13, 2013, Defendant filed a Response to Plaintiff's Objections,

making the matter ripe for judicial review.

**II. STANDARD OF REVIEW**[2]

    **A.**     <u>**Standard for Judicial Review of an ALJ's Decision**</u>

It is well-established that judicial review of the Commissioner's decision is limited to determining whether "substantial evidence" supports the decision. <u>Burnett v. Comm'r of Soc. Sec. Admin.</u>, 220 F.3d 112, 118 (3d Cir. 2000). "Substantial evidence 'does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Hartranft v. Apfel</u>, 181 F.3d 358, 360 (3d Cir. 1999) (quoting <u>Pierce v. Underwood</u>, 487 U.S. 552, 564–65 (1988)). When making this determination, a reviewing court may not undertake a de novo review of the Commissioner's decision and may not re-weigh the evidence of record. <u>Monsour Med. Ctr. v. Heckler</u>, 806 F.2d 1185, 1190 (3d Cir. 1986). In other words, even if the reviewing court, acting de novo, would have decided the case differently, the Commissioner's decision must be affirmed when supported by substantial evidence. <u>Id.</u> at 1190–91; see also <u>Gilmore v. Barnhart</u>, 356 F. Supp. 2d 509, 511 (E.D. Pa. 2005) (holding that the court's scope of review is "'limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact'") (quoting <u>Schwartz v. Halter</u>, 134 F. Supp. 2d 640, 647 (E.D. Pa. 2001)).

    **B.**     <u>**Standard of Review of Objections to a Report and Recommendation**</u>

---

[2] The five-step sequential analysis for assessing a disability claim was adequately summarized by the Magistrate Judge. In lieu of repeating that discussion, the Court incorporates by reference this portion of the R&R into this Memorandum.

Where a party makes a timely and specific objection to a portion of a report and recommendation by a United States Magistrate Judge, the district court is obliged to engage in de novo review of only those issues raised on objection. 28 U.S.C. § 636(b)(1); see also Sample v. Diecks, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989). In so doing, a court may "accept, reject, or modify, in whole or in part, the findings and recommendations" contained in the report. 28 U.S.C. § 636(b)(1). The court may also, in the exercise of sound judicial discretion, rely on the Magistrate Judge's proposed findings and recommendations. See United v. Raddatz, 447 U.S. 667, 676 (1980).

### III. DISCUSSION

Although Plaintiff divides his Objections into five separate arguments, they all essentially address one major alleged error—the ALJ's rejection of treating physician Dr. Sholevar's opinion in favor of the opinion from non-examining state agency physician Dr. Croyle. Accordingly, the Court addresses Plaintiff's arguments collectively.

Under applicable regulations and controlling case law, "opinions of a claimant's treating physician are entitled to substantial and at times even controlling weight." Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001) (citing 20 C.F.R. § 404.1527(d)(2)). A treating source's opinion on the issue of the nature and severity of a claimant's impairment will be given controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(d)(2). "An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting

4

explanations are provided." Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). The factors to be considered in assigning the appropriate weight to a medical opinion include: length of treating relationship and frequency of examination, nature and extent of treating relationship, supportability, consistency, specialization, and other relevant factors. 20 C.F.R. § 416.927(c)(2).

In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may not reject a treating physician's opinion "due to his or her own credibility judgments, speculation or lay opinion." Morales v. Apfel, 225 F.3d 310, 317–18 (3d Cir. 2000) (quotations omitted). Further, when disregarding such an opinion, the ALJ must explain on the record his reasons for doing so. Brewster v. Heckler, 786 F.2d 581, 585 (3d Cir. 1986). It cannot be "for no reason or for the wrong reason." Morales, 225 F.3d at 317 (quotations omitted). At the end of the analysis, however, "[t]he ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011). "The law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." Brown v. Astrue, 649 F.3d 193, 197 n.2 (3d Cir. 2000).

In the present case, via a September 15, 2011 Medical Assessment of Ability to Do Work-Related Activities (Mental), Dr. Sholevar diagnosed Plaintiff with major depressive disorder recurrent and psychotic depression. (R. 461.) She found that his ability to follow work rules, relate to co-workers, deal with the public, interact with supervisors, and use judgment was good to very good, but that his ability to function independently was fair, and his ability to deal with work stresses and maintain concentration and attention was poor. (Id. at 462.) She went on to remark that Plaintiff had poor to no ability to understand, remember, and carry out complex or

5

detailed work instructions, with only a fair ability to understand, remember, and carry out simple instructions. (Id. at 463.) In addition, he had a fair ability to maintain personal appearance, but poor to no ability to behave in an emotionally stable manner, relate predictably in social situations, or demonstrate reliability. (Id. at 464.) Ultimately, she believed him likely to decompensate in a work setting due to stress, miss three or more days of work per month due to psychological symptoms or difficulties, and frequently experience deficiencies in concentration, persistence, and pace. (Id. at 465.) In lieu of any written explanation for her checklist assessment, Dr. Sholevar referred solely to the psychiatric evaluation completed by Nueva Vida Behavioral Health Center in September 2010. (Id. at 461–66.)

Upon review, the ALJ gave little weight to Dr. Sholevar's assessment. He reasoned that "the supporting explanation [for Dr. Sholevar's assessment] refers to Nueva Vida's evaluation of the claimant . . . which suggests that the claimant has a greater level of mental functioning." (Id. at 31.) The Magistrate Judge subsequently found no error in the ALJ's decision, noting that the Biopsychosocial Evaluation from Nueva Vida upon which Dr. Sholevar so heavily relied reflected that Plaintiff had only moderate symptoms. (R&R 5.) The Magistrate Judge went on to note that Plaintiff's treatment notes from Nueva Vida did not describe any extreme symptoms or behaviors. (Id. at 5.)

Notwithstanding Plaintiff's multiple arguments to the contrary, this Court now finds no error in either the ALJ's decision to reject Dr. Sholevar, or the Magistrate Judge's approval of that ruling. First, with respect to Plaintiff's allegation that the ALJ's reasons for rejecting the treating sources opinion do not comport with Agency policy, which require special deference to a treating physician's opinion, Plaintiff's Objection is misplaced. As the United States Court of

Appeals for the Third Circuit has made clear, although "treating physicians' opinions are assumed to be more valuable than those of non-treating physicians," this "assumption does not turn on impermissibly mechanical deference to the treating physician's opinion." Cyprus Cumberland Res. v. Dir., Office of Workers' Compensation Programs, 170 F. App'x 787, 792 (3d Cir. 2006). An ALJ's decision to reject the opinion of a treating physician is proper where the physician's own treatment records do not support his/her opinion and the record contains medical evidence contrary to his/her opinion. See Grogan v. Comm'r of Soc. Sec., 459 F. App'x 132, 137–38 (3d Cir. 2012); see also Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The ALJ need not accept an opinion of a physician—even a treating physician—if it is conclusory and brief and is unsupported by clinical findings."); Santiago v. Astrue, No. Civ.A.11-3650, 2012 WL 1080181, at *9 (E.D. Pa. Mar. 28, 2012) ("[I]n light of the relatively cursory and checklist format of [the treating physician's] opinion, the sparsity of the support for her conclusions in her own records, and the contradictory nature of the medical evidence from [the plaintiff's] treating therapist, the Court holds that the ALJ was not required to attribute more than 'little to no weight' to [the treating physician's] opinion of [the plaintiff's] mental limitations."). Further, as the Third Circuit has observed, "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank"—as is the case here—"are weak evidence at best." Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993). This is particularly true when those residual capacity reports are "unaccompanied by thorough written reports." See Brewster v. Heckler, 786 F.2d 581, 585 (3d Cir. 1986). Accordingly, controlling jurisprudence clarifies that the ALJ was not required to blindly accept Dr. Sholevar's opinion without consideration of the entire record.

Second, to the extent Plaintiff contends that the ALJ rejected Dr. Sholevar's opinion without pointing to contrary medical evidence, his Objections are likewise unfounded.  As the sole explanation for her checklist assessment of Plaintiff's limitations, Dr. Sholevar cited exclusively to the Nueva Vida Biopsychosocial Evaluation.  (R. 367–73.)  That evaluation, however, reflected substantially less severe symptoms than suggested by Dr. Sholevar.  On mental status exam, Plaintiff had an appropriate and stable affect, was moderately depressed, had mild anxiety, mild motility, adequate memory, and good self-observation and insight.  (Id. at 370.)  Plaintiff's diagnoses were major depressive disorder recurrent and "rule out psychotic depression."  (Id. at 371.)  The evaluator gave him a Global Assessment of Functioning ("GAF") score of 52, which indicates only moderate symptoms or moderate difficulty in social, occupational, or school functioning.  Diagnostic and Statistical Manual of Mental Disorders. Fourth Edition, Text Revision (DSM-IV-TR) 34 (4th ed. 2000).[3]  Nothing in that evaluation remotely supported Dr. Sholevar's extreme limitations on Plaintiff's functioning.

Moreover, the ALJ referenced the treatment notes from Nueva Vida.  (R. 27, 29.)  Those treatment notes—including the only two progress notes from Dr. Sholevar—showed that even though Plaintiff was not compliant with his medication, he nonetheless had fair affect and mood, low anxiety and irritability, and only moderate social isolation.  (R. 375–405.)  Indeed, in November 16, 2010, Plaintiff admitted to looking for work "in case he gets denied SSI"—an action highly inconsistent with an individual as limited as the one described by Dr. Sholevar.  (Id. at 402.)  Like the Nueva Vida evaluation, these notes contradict the extreme limitations from Dr.

---

[3] An individual with a GAF score of 51–60 may have "[m]oderate symptoms" or "moderate difficulty in social, occupational, or school functioning."  DSM-IV-TR at 34.

Sholevar's report.

Finally, the ALJ had the benefit of an assessment from State agency psychologist, Dr. Croyle. (Id. at 31.) Following an extensive explanation of Plaintiff's mental health based on a review of Plaintiff's medical records through December 2010, Dr. Croyle agreed that Plaintiff had major depressive disorder, but assessed him with marked limitations only in his ability to understand, remember, and carry out detailed instructions, and only slight to moderate limitations in all other areas. (Id. at 434–50.) The ALJ credited this opinion as: (a) it was based upon a review of all the medical evidence; (b) it was "consistent with the evidence of record as a whole;" (c) Dr. Croyle is "well trained and experienced in Social Security disability evaluation;" and (d) Dr. Croyle provided "specific reasons for his opinion about the claimant's mental residual functional capacity." (Id. at 31.) Considering this assessment, together with the Nueva Vida evaluation and the progress notes, the ALJ had substantial contrary evidence on which to rest his rejection of Dr. Sholevar's checklist report.

Third, to the extent Plaintiff claims that Dr. Sholevar's opinion was supported by the state's own examining psychologist, Janet Horwitz, his argument is meritless. Dr. Horwitz rendered an opinion on November 22, 2010 after a one-time examination of Plaintiff. (Id. at 423–33.) She deemed him moderately impaired in his ability to understand and remember short and simple instructions and his ability to interact appropriately with supervisors, markedly impaired in his ability to carry out short and simple instructions, and extremely impaired in all other areas of mental functioning. (Id. at 430.) While this assessment was more consistent with Dr. Sholevar's, the ALJ properly found that it was entitled to little weight, as follows:

Dr. Horwitz's assessment of marked and extreme limitations in mental functioning

> . . . is not entitled to much weight because it is based in part on the claimant's report of drinking two cases of beer every day and need for intensive mental health treatment based on evaluation. The record indicates otherwise, as claimant currently drinks one case or less of beer once per month (Hr'g Test.), takes his medications, attends therapy, and has no psychiatric hospitalizations. Additionally, his mental status examination findings showed him conscious, aware, alert, and fully oriented with an appropriate and stable affect, moderately depressed, mildly anxious, and having adequate memory and judgment. The GAF score of 52 suggests no greater than moderately limited mental functioning.

(Id. at 31.) Moreover, the ALJ remarked that Dr. Horwitz rested her assessment almost entirely on Plaintiff's own reporting. (Id. at 29.) "[A] medical source does not transform the claimant's subjective complaints into objective findings simply by recording them. . . ." Hatton v. Comm'r, 131 F. App'x 877, 879 (3d Cir. 2005) (citation omitted); see Clements v. Apfel, 76 F. Supp. 2d 599, 603 (E.D. Pa. 1999) ("It was reasonable for the ALJ to discount a medical opinion based solely on a patient's subjective complaints rather than objective medical evidence."). As the ALJ appropriately found that Plaintiff was not entirely credible, the ALJ was then free to reject a medical opinion based almost exclusively on Plaintiff's own reporting.

Fourth, Plaintiff contends that the ALJ's dismissal of Dr. Sholevar's opinion was erroneously based in part on an inconsistent "opinion that is no where to be found in the file"—specifically a June 16, 2010 evaluation (Pl.'s Objections 6.) In his decision, the ALJ referenced a "two-part comprehensive biopsychosocial evaluation performed in at [sic] Nueva Vida Behavioral Health Center on June 16, 2010, and September 10, 2010" and relies on that evaluation to discredit Dr. Sholevar (R. 27.) Although Plaintiff now contends that the June 2010 evaluation does not exist, he fails to note that the Nueva Vida Biopsychosocial evaluation upon which Dr. Sholevar relies was performed in two stages, with Part I being done on June 16, 2010 and Part II being performed on September 10, 2010. (Id. at 367.) Accordingly, the June

evaluation to which the ALJ refers is included as part of the comprehensive Nueva Vida evaluation.

Finally, Plaintiff contends that the ALJ's rejection of Dr. Sholevar's assessment is not based on a "longitudinal picture" of Plaintiff's mental illness. (Pl.'s Objections 2.) More precisely, Plaintiff argues that the only medical opinion of record to take into consideration all of the medical records was that of Dr. Sholevar, as her opinion was rendered in September 2011. Dr. Croyle—whose opinion the ALJ accepted—offered his assessment based on a review of the records through December 2010.

As accurately noted by the Magistrate Judge, however, Dr. Sholevar gave no indication that she considered the post-2010 treatment notes or incorporated them into her report. Indeed, on four different occasions in her otherwise checklist-only report, Dr. Sholevar explained her assessment by simply stating "see attached Psychiatric evaluation," referring to the Nueva Vida evaluation. (R. 461–66.) That evaluation was completed in September 2010. Thus, notwithstanding the fact that Dr. Sholevar signed and dated her assessment on September 15, 2011, the ALJ reasonably inferred that it was based solely on an evaluation of September 2010. Moreover, a review of the copious post-2010 progress notes from Plaintiff's regular therapist actually undermines Dr. Sholevar's assessment. Over repeated visits, Plaintiff's mental health was documented as unremarkable except for feelings of depression, frustration, and/or anxiety related to girlfriend issues, worries about distant children, and economic/financial struggles. (R. 500–25.) Further, when Plaintiff was noted to have kept himself busy, he was reported to be more relaxed. (R. 503.) On several occasions, Plaintiff indicated the he was asking around for work, (R. 517), or actually working under the table doing food delivery. (R. 522.) Such reports

of work efforts are clearly not reflected in Dr. Sholevar's highly-restrictive assessment.

In sum, the Court finds that the ALJ's opinion is well-supported by substantial evidence of record and that the Magistrate adequately and accurately addressed any concerns of error by the ALJ in his Report and Recommendation.  While Plaintiff undoubtedly suffers from some sort of mental illness, the record clearly reflects supports a finding that he is not restricted from all work.  A mere checklist opinion from a treating physician, unaccompanied by any explanation, is an insufficient basis on which the ALJ can disregard that record and find Plaintiff disabled.  Accordingly, the Court overrules Plaintiff's objections, adopts the Report and Recommendation, and affirms the final decision of the Commissioner of Social Security.

An appropriate Order follows.